**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| IRISH STEWART, on behalf of herself and all others similarly situated,<br><br>5932 Hillen Road<br>Baltimore, MD 21239<br>Baltimore County<br><br>Plaintiff,<br><br>v.<br><br>MEDSTAR HEALTH INC,<br><br>10980 Grantchester Way, 6th Floor<br>Columbia, MD 21044<br>Howard County<br><br>Defendant. | Case No.<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff, Irish Stewart ("Plaintiff"), on behalf of herself and all others similarly situated, states as follows for her class action complaint against Defendant, Medstar Health Inc. ("Medstar" or "Defendant"):

**NATURE OF THE ACTION**

1. This Class Action arises from, on information and belief, a cyberattack that resulted in a data breach of sensitive information in the possession and custody and/or control of Defendant (the "Data Breach"). On information and belief, the Breach affects thousands of current and former patients.

2. The Data Breach resulted in unauthorized disclosure, exfiltration, and theft of current and former patients' highly personal information, including their personally identifying

information ("PII") as well as protected health information ("PHI"). Plaintiff refers to both PII and PHI collectively as "Sensitive Information."

3. On information and belief, the infamous cybercriminal gang, "Rhysida" posted the stolen information, including Plaintiff and the Class's Sensitive Information onto the dark web on or around October 4, 2025.

4. As of October 8, 2025, Defendant has not yet begun notifying Class Members about the Data Breach.

5. Defendant continues to delay informing Class Members even though Plaintiff and thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

6. Defendant's failure to acknowledge the Breach intentionally obfuscate the nature of the breach and the threat it posted—how the breach happened, and why Defendant continues to delay notifying victims that hackers had gained access to highly private Sensitive Information.

7. Defendant's failure to timely detect and continued delay in reporting the Data Breach made its patients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

8. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

9. In failing to adequately protect Plaintiff's and the Class's Sensitive Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law and harmed thousands of its current and former patients.

10. Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Sensitive Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

11. Plaintiff is a patient and Data Breach victim.

12. Accordingly, Plaintiff, on behalf of herself and a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

**PARTIES**

13. Plaintiff, Irish Stewart is a natural person and citizen of Baltimore, Maryland, where she intends to remain.

14. Defendant, Medstar, is a Maryland company with its principal place of business at 10980 Grantchester Way, Columbia, MD 21044.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one class member and Defendant are of different states. And there are over 100 putative Class members.

16. This Court has personal jurisdiction over Defendant because Defendant is headquartered in Maryland, regularly conducts business in Maryland, and has sufficient minimum contacts in Maryland.

17. Venue is proper in this Court because at least one of the Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

***Medstar***

18. With multiple locations throughout DMV area, Defendant boasts on its website that "We deliver outstanding care to people experiencing a variety of medical conditions."[1] It touts an annual revenue of $4.4 billion.[2]

19. In collecting and maintaining its current and former patients' Sensitive Information, Defendant agreed it would safeguard the data in accordance with state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Sensitive Information.

20. Indeed, Defendant acknowledges in its Privacy Policy that it "take[s] reasonable measures to protect your information from loss, theft, misuse, unauthorized access, disclosure, alteration, and destruction."[3]

21. Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonably cybersecurity safeguards or policies to protect its patients' Sensitive Information or supervised its IT or data security agents and employees to prevent, detect, and stop

---

[1] Home, https://www.medstarhealth.org/ (last visited October 8, 2025).
[2] Zoominfo, https://www.zoominfo.com/c/medstar-health/372836681 (last visited October 06, 2025).
[3] Online Privacy Policy, https://www.medstarhealth.org/online-privacy-policy (last visited October 06, 2025).

breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to patients' Sensitive Information.

***The Data Breach***

22. Plaintiff is a patient and is a data breach victim. As a condition of treatment as a patient there, Plaintiff provided Defendant with her Sensitive Information. This was used to facilitate treatment of Plaintiff. Defendant required Plaintiff to provide that Sensitive Information to obtain treatment and care.

23. On information and belief, Defendant collects and maintains patients' Sensitive Information in its computer systems.

24. In collecting and maintaining Sensitive Information, Defendant implicitly agrees that it will safeguard the data using reasonable means according to state and federal law.

25. Worryingly, the cybercriminals that obtained Plaintiff's and Class Members' PII appear to be the notorious cybercriminal group "Rhysida."

26. Rhysida is one of the most infamous and active cyberhacker, having joined the scene in 2023 and quickly gaining media attention and global notoriety.[4] Defendant, self-proclaimed leader in its industry, knew or should have known of the tactics that groups like Rhysida employs.

---

[4] Meet Rhysida, https://en.wikipedia.org/wiki/Rhysida_(hacker_group) (last visited October 06, 2025).

**Dark Web Informer**
@DarkWebInformer

X.com

🚨 🇺🇸 Medstar Health has Fallen Victim to Rhysida Ransomware

Ransom: 25 BTC or $3,043,975.00 at the time of this post.

MedStar Health

Medstar Health

MedStar Health, founded in 1998, is a not-for-profit healthcare system serving Maryland and the Washington, D.C. region. The organization operates a network of 10 hospitals, multiple ambulatory care facilities, and urgent care centers.

**Over 7 million pieces of patient personal data!**

**SQL databases, diagnoses, pharmaceuticals, and much more!**



6 days 23:24:36

With just 7 days on the clock, seize the opportunity to bid on exclusive, unique, and impressive data. Open your wallets and be ready to buy exclusive data. We sell only to one hand, no reselling, you will be the only owner!

Price: 25 BTC

11:42 AM · 10/4/25 · **1.3K** Views

**Medstar Health**

Medstar Health

MedStar Health, founded in 1998, is a not-for-profit healthcare system serving Maryland and the Washington, D.C. region. The organization operates a network of 10 hospitals, multiple ambulatory care facilities, and urgent care centers.

**Over 7 million pieces of patient personal data!**

**SQL databases, diagnoses, pharmaceuticals, and much more!**




With just 7 days on the clock, seize the opportunity to bid on exclusive, unique, and impressive data. Open your wallets and be ready to buy exclusive data. We sell only to one hand, no reselling, you will be the only owner!

Price: 25 BTC

Leave your mail and comment. We cannot

Captcha

Send

MedStar Health provides comprehensive medical services while advancing healthcare through education, innovation, and research initiatives. The organization maintains a research institute and serves as the medical education and clinical partner of Georgetown University.

27. And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[5]

28. Defendant's cyber and data security systems were so completely inadequate that it allowed cybercriminals to obtain files containing a treasure trove of thousands of its patients' highly private Sensitive Information.

29. Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's Sensitive Information for theft and sale on the dark web.

30. As of October 8, 2025, Defendant has not yet begun notifying Class Members about the Data Breach.

31. Despite its duties and alleged commitments to safeguard Sensitive Information, Defendant did not in fact follow industry standard practices in securing patients' Sensitive Information, as evidenced by the Data Breach.

32. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

33. On information and belief, Defendant plans to offer several months of complimentary credit monitoring services to victims, which does not adequately address the

[5] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers.

34. On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its patients' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice.***

35. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare and healthcare adjacent industry preceding the date of the breach.

36. In light of recent high profile data breaches at other healthcare and healthcare adjacent companies, Defendant knew or should have known that its electronic records and patients' Sensitive Information would be targeted by cybercriminals.

37. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[6] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[7]

38. Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber

[6] 2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited January 10, 2024).
[7] *Id*.

criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [8]

39. Cyberattacks on medical systems and healthcare and healthcare adjacent companies like Defendant have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[9]

40. In fact, many high-profile ransomware attacks have occurred in healthcare and healthcare adjacent companies, with an estimated that nearly half of all ransomware attacks being carried out are on healthcare companies, and with 85% of those attacks being ransomware similar to the one occurring here.[10]

41. Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Plaintiff's Experience***

42. Plaintiff is a patient and is a data breach victim. As a condition of treatment as a patient there, Plaintiff provided Defendant with her Sensitive Information. This was used to facilitate treatment of Plaintiff. Defendant required Plaintiff to provide that Sensitive Information to obtain treatment and care.

43. Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by failing to promptly notify her.

---

[8] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited January 10, 2024).

[9] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited January 10, 2024).

[10] Ransomware explained, CSO, https://www.csoonline.com/article/563507/what-is-ransomware-how-it-works-and-how-to-remove-it.html (last visited January 10, 2024);

44. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Sensitive Information for theft by cybercriminals and sale on the dark web.

45. As a result of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

46. Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach.

47. Plaintiff has and is experiencing feelings of anxiety, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

48. Plaintiff have suffered actual injury in the form of damages to and diminution in the value of their Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

49. Plaintiff suffered actual injury from the exposure of her Sensitive Information—which violates her rights to privacy.

50. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

51. Indeed, following the Data Breach, Plaintiff began suffering a significant increase in spam calls, emails, and texts. These spam calls and texts again suggest that her Sensitive Information is now in the hands of cybercriminals.

52. Further and also following the Data Breach, Plaintiff was forced to close out her navy federal account due to numerous suspicious activity. This suspicious activity is further evidence that her Sensitive Information is now in the hands of cybercriminals.

53. Once an individual's Sensitive Information is for sale and access on the dark web, as Plaintiff's Sensitive Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[11] On information and belief, the spam texts, emails, and calls as well as the suspicious activity on her navy federal account are a result of the Data Breach.

54. Plaintiff has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

55. Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

56. As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Sensitive Information is used;

b. The diminution in value of their Sensitive Information;

c. The compromise and continuing publication of their Sensitive Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

[11] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited January 9, 2024).

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Sensitive Information; and

h. The continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in its possession.

57. Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

58. The value of Plaintiff's and the Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

59. It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

60. One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

61. Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete

scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

62. The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

63. Defendant disclosed the Sensitive Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

64. Defendant's failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Consumers Prioritize Data Security***

65. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[12] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[13]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[14]

c. 89% of consumers stated that "I care about data privacy."[15]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[16]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[17]

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[18]

---

[12] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).
[13] *Id*. at 3.
[14] *Id*.
[15] *Id*. at 9.
[16] *Id*.
[17] *Id*.
[18] *Id*. at 11.

66. Defendant knew or should have known that adequate implementation of cybersecurity and protection of Sensitive Information, including Plaintiff and the Class's Sensitive Information, was important to its patients.

***Defendant failed to adhere to FTC guidelines.***

67. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

68. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the sensitive consumer information that it keeps.

b. properly dispose of Sensitive Information that is no longer needed.

c. encrypt information stored on computer networks.

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

69. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

70. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

71. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

72. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Violated HIPAA***

73. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [19]

74. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[20]

75. The Data Breach itself resulted from a combination of inadequacies showing Defendant's failure to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

---

[19] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[20] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendant in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

76. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Defendant Fails to Comply with Industry Standards***

77. As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

78. Several best practices have been identified that a minimum should be implemented by employers in possession of PII and PHI, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry's best practices, including a failure to implement multi-factor authentication.

79. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

80. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both

the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

81. These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its patients. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

82. Plaintiff brings this class action individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Sensitive Information was compromised in the Data Breach, including all those who receives notice of the breach.

83. Excluded from the Class is Defendant, their agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

84. Plaintiff reserves the right to amend the class definition.

85. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

a. **Numerosity**. Plaintiff is representative of the Class, consisting of several thousand members, far too many to join in a single action;

b. **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control.

c. **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. Her interests do not conflict with the Class's interests, and she has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information.

ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

iii. Whether Defendant were negligent in maintaining, protecting, and securing Sensitive Information.

iv. Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's Sensitive Information.

v. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi. Whether the Data Breach caused Plaintiff's and the Class's injuries.

vii. What the proper damages measure is; and

viii. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

86. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

87. Plaintiff realleges all previous paragraphs as if fully set forth below.

88. Plaintiff and the Class entrusted their Sensitive Information to Defendant on the premise and with the understanding that Defendant would safeguard their Sensitive Information, use their Sensitive Information for business purposes only, and/or not disclose their Sensitive Information to unauthorized third parties.

89. Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Sensitive Information in a data breach. And here, that foreseeable danger came to pass.

90. Defendant has full knowledge of the sensitivity of the Sensitive Information and the types of harm that Plaintiff and the Class could and would suffer if their Sensitive Information was wrongfully disclosed.

91. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class Members' Sensitive Information.

92. Defendant owed—to Plaintiff and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the Sensitive Information in its care and custody.

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized.

c. promptly detect attempts at unauthorized access.

d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their Sensitive Information.

93. Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

94. Defendant also had a duty to exercise appropriate clearinghouse practices to remove Sensitive Information it was no longer required to retain under applicable regulations.

95. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Sensitive Information of Plaintiff and the Class

involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

96. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Sensitive Information, a necessary part of obtaining services from Defendant.

97. The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendant hold vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information —whether by malware or otherwise.

98. Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

99. Defendant improperly and inadequately safeguarded the Sensitive Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

100. Defendant breached these duties as evidenced by the Data Breach.

101. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' Sensitive Information by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

102. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Sensitive Information of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

103. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

104. Defendant has admitted that the Sensitive Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

105. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

106. And, on information and belief, Plaintiff's Sensitive Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

107. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

108. Plaintiff realleges all previous paragraphs as if fully set forth below.

109. In addition to its duties under common law, Defendant had additional duties imposed by statute and regulations, including the duties under the FTC Act. The harms which occurred as a result of Defendant's failure to observe these duties, including the loss of privacy, lost time and expense, and significant risk of identity theft are the types of harm that these statutes and regulations intended to prevent.

110. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information.

111. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Sensitive Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class Members' Sensitive Information.

112. Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

113. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant had collected and stored and the

foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

114. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

115. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

116. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant were failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

117. Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class Members' PHI.

118. Defendant violated its duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed supra. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of PHI that Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

119. Defendant's violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

120. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**COUNT III**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

121. Plaintiff realleges all previous paragraphs as if fully set forth below.

122. Plaintiff and the Class delivered their Sensitive Information to Defendant as part of the process of obtaining treatment and services provided by Defendant.

123. Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff's and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

124. In providing their Sensitive Information, Plaintiff and Class Members entered into an implied contract with Defendant whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' Sensitive Information.

125. In delivering their Sensitive Information to Defendant, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard that data.

126. Plaintiff and the Class Members would not have entrusted their Sensitive Information to Defendant in the absence of such an implied contract.

127. Defendant accepted possession of Plaintiff's and Class Members' Sensitive Information.

128. Had Defendant disclosed to Plaintiff and Class Members that Defendant did not have adequate computer systems and security practices to secure patients' Sensitive Information, Plaintiff and members of the Class would not have provided their Sensitive Information to Defendant.

129. Defendant recognized that patients' Sensitive Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

130. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

131. Defendant breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard its data.

132. Defendant breached the implied contract with Plaintiff and Class Members by failing to promptly notify them of the access to and exfiltration of their Sensitive Information.

133. As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' Sensitive Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Sensitive Information; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security

that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their Sensitive Information; and (h) the continued and substantial risk to Plaintiff's and Class Members' Sensitive Information, which remains in the Defendant's possession with inadequate measures to protect Plaintiff's and Class Members' Sensitive Information.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

134. Plaintiff realleges all previous paragraphs as if fully set forth below.

135. This claim is pleaded in the alternative to the breach of contractual duty claim.

136. Plaintiff and members of the Class conferred a benefit upon Defendant in providing Sensitive Information to Defendant.

137. Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Class. Defendant also benefited from the receipt of Plaintiff's and the Class's Sensitive Information, as this was used to facilitate the treatment, services, and goods it sold to Plaintiff and the Class.

138. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class's Sensitive Information because Defendant failed to adequately protect their Sensitive Information. Plaintiff and the proposed Class would not have provided their Sensitive Information to Defendant had they known Defendant would not adequately protect their Sensitive Information.

139. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

**COUNT V**
**Invasion of Privacy—Intrusion Upon Seclusion**
**(On Behalf of Plaintiff and the Class)**

140. Plaintiff realleges all previous paragraphs as if fully set forth below.

141. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

142. Defendant owed a duty to its patients, including Plaintiff and the Class, to keep this information confidential.

143. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' Sensitive Information is highly offensive to a reasonable person.

144. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant as part of their employment, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

145. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

146. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

147. Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

148. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

149. As a proximate result of Defendant's acts and omissions, the Sensitive Information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

150. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class because their Sensitive Information are still maintained by Defendant with its inadequate cybersecurity system and policies.

151. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiff and the Class.

152. In addition to injunctive relief, Plaintiff, on behalf of herself and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**COUNT VI**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

153. Plaintiff realleges all previous paragraphs as if fully set forth below.

154. In light of the special relationship between Defendant and Plaintiff and Class Members, whereby Defendant became guardian of Plaintiff's and Class Members' Sensitive Information, Defendant became a fiduciary by its undertaking and guardianship of the Sensitive Information, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' Sensitive Information; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

155. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendant's relationship with its, in particular, to keep secure their Sensitive Information.

156. Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discovery, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

157. Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' Sensitive Information.

158. Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

159. Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Sensitive Information.

160. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Sensitive Information;

(iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Sensitive Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in their continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of Defendant's services they received.

161. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**COUNT VII**
**Violations of the Maryland Consumer Protection Act**
**Md. Code Ann., Com. Law § 13-101, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

162. Plaintiff realleges all previous paragraphs as if fully set forth below.

163. The Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, *et seq*. ("MCPA"), applies to Defendant because Defendant is headquartered in Maryland and does substantial business in Maryland.

164. Plaintiff and Class Members all constitute consumers under the MCPA.

165. The MCPA prohibits "any unfair, abusive, or deceptive trade practice[.]" Md. Code Ann., Com. Law § 13-303.

166. Defendant violated the MCPA by, *inter alia*:

a. failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' Sensitive Information, which was a direct and proximate cause of the Data Breach.

b. failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach.

c. failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Sensitive Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, et seq., which was a direct and proximate cause of the Data Breach.

d. omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' Sensitive Information; and

e. omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Sensitive Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

167. Moreover, Defendant violated the MCPA by failing to comply with the Maryland Personal Information Protection Act., Md. Comm. Code §§ 14-3501, *et seq*. ("PIPA"). Specifically, Defendant violated PIPA by, *inter alia*:

a. failing to "protect personal information from unauthorized access, use, modification, or disclosure";

b. failing to "implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal information owned, maintained, or licensed";

c. failing to require its third-party service providers (if any) to "require by contract that the third party implement and maintain reasonable security procedures and practices"; and

d. On information and belief, failing to provide notice to Plaintiff and Class Members "as reasonably practicable, but not later than 45 days after the business discovers or is notified of the breach of the security of a system[.]"

168. Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their Sensitive Information.

169. Defendant intended to mislead Plaintiff and Class Members and induce them to rely on its omissions.

170. Had Defendant disclosed to Plaintiff and Class Members (or their third-party agents) that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business, and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted the Sensitive Information that Plaintiff and Class Members entrusted to it while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class Members acted reasonably in

relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

171. Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class Members' rights.

172. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Sensitive Information.

173. And, on information and belief, Plaintiff's Sensitive Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

174. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law.

## **PRAYER FOR RELIEF**

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representatives, and appointing their counsel to represent the Class.

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class.

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class.

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information.

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law.

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial.

G. Awarding attorneys' fees and costs, as allowed by law.

H. Awarding prejudgment and post-judgment interest, as provided by law.

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

Dated: October 9, 2025

By: */s/ Zachary E. Howerton*

Zachary E. Howerton (MD Fed Bar No. 20688)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
223 Duke of Gloucester Street
Annapolis, MD 21401
Telephone: (410) 269-6620
Facsimile: (410) 269-1235
zhowerton@milberg.com

Raina C. Borrelli (*pro hac vice* anticipated)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

*Attorneys for Plaintiff and the Proposed Class*